William L. HERRON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 38250.

Missouri Court of Appeals, Western District.

March 3, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1987.

Dennis D. Goodden, Craig A. Johnston, Public Defender's Office, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty Gen., Kansas City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

Appellant, William L. Herron, seeks to vacate his convictions for kidnapping § 565.110 RSMo 1978 (three counts) and attempted escape from confinement § 564.-011 and § 575.210 RSMo 1978 under Rule 27.26. These convictions are a result of a guilty plea. The basis for his appeal are twofold: (1) that his plea of guilty was contingent upon his being transferred to another state to serve his time, which did not occur and (2) that the sentencing court taxed him $26 pursuant to § 595.045 RSMo Supp.1983 and that sentence was in excess of the maximum authorized by law. The judgment of the trial court is affirmed in part and reversed in part.

Appellant's conviction arose out of events that occurred on or about July 25, 1981. On March 23, 1982, appellant appeared with counsel, withdrew his previous

plea of not guilty to these charges, and entered a plea of guilty.

In exchange for his pleas of guilty, the State agreed to dismiss Count IV of the indictment, which charged the appellant with armed criminal action. As part of the plea, the State recommended to the court that the appellant receive life sentences on each of the three kidnapping counts, and a 15–year sentence for attempted escape (Count V) with the sentences to be served concurrently with each other, but consecutive to the terms of imprisonment that the appellant was presently serving. Appellant had originally been imprisoned for killing a deputy sheriff and had been charged with kidnapping a guard during an earlier escape attempt from a Kentucky prison.

During the guilty plea, the appellant was asked by the court whether he had received any promises other than those specifically contemplated by the plea bargain, he responded:

A. Yes, sir; by the prison administration that I would be transferred.

Q. Have they assured you that you would be transferred?

A. Yes, sir.

At that point, Mr. Allred, the appellant's attorney, interjected that such a transfer was not assured, although prison officials had indicated they would make every effort to achieve such a transfer. As a result of these statements, the following colloquy occurred:

MR. ALLRED: Not assured, they said they would try earnestly every single state that was a member of the compact.

THE COURT: Is that your understanding, Mr. Callahan?

MR. CALLAHAN: My understanding is that there is no guarantee.

MR. ALLRED: That's right.

MR. CALLAHAN: Mr. Armontrout indicated that he would do everything they could to see that Mr. Herron would be moved to another penal institution.

THE COURT: Well, let me ask you this: Do you have confidence that that will be done?

MR CALLAHAN: No question in my mind that Mr. Armontrout will make a sincere effort, an honest and sincere effort.

THE COURT: What about you?

MR. ALLRED: Nor any question in my mind. Bill Armontrout is one of the most honest men I have ever seen in my life.

Q. [by the Court] How do you feel about it, Mr. Herron, about that part of it? Do you have confidence that Mr. Armontrout will try to do that?

A. I don't know, sir. There are—I don't know what they are subject to do. There has been several statements made that were inconsistent by Mr. Armontrout, by the warden; and my attorney has tried to defend them. So I honestly don't know what they will do, I can't say.

Q. All right. You are willing to accept their assurance that they will try.

A. I am willing to accept Mr. Allred's assurance that if I am not transferred, well, he told me that he would contact every newspaper and everybody that he could think of to contact to assure that this promise that was made to me would be exposed that it wasn't kept.

At the conclusion of the plea proceeding, the appellant's guilty pleas were accepted, and the appellant was sentenced in accordance with the State's recommendation. The trial judge also entered a judgment against the appellant in the amount of $26 for the "Crime Victims' Compensation Fund".

The appellant filed a *pro se* motion under Rule 27.26, V.A.M.R., seeking to withdraw his guilty pleas and set aside his sentences. Counsel was appointed and filed an amended motion. That motion alleged that the terms of the plea agreement were not kept.

The amended motion also alleged that the twenty-six dollar ($26) judgment assessed should be vacated because the statute authorizing such an assessment, § 595.045.1, RSMo Supp.1983, would constitute an *ex post facto* law if applied to the appellant's case.

The evidentiary hearing on appellant's motion was before a different judge than the one who sentenced appellant. At that hearing, the appellant testified that follow-

ing his guilty pleas he made two requests for an out-of-state transfer, but "never heard anything." He insisted that the reason he pled guilty was to be transferred out of state. The appellant said that he was told that he would be transferred "within ten days." The appellant conceded that he had no way of knowing whether prison official attempted to effectuate the transfer:

Q. Mr. Herron, okay, listen. You do not know how hard they tried or how hard they didn't try; correct?

A. No, I don't know.

Q. As far as you know, they may have tried very hard or as far as you know they may not have tried at all; correct?

A. I don't have any idea.

Subsequent to the hearing, the trial court issued a "Memorandum Decision" denying the appellant's Rule 27.26 motion. The court held that the record did not support this allegation that the State did not make a good faith effort to transfer him and that the burden was on the appellant "to come forward with evidence" to support it. The court also refused to vacate the judgment assessing the $26 payment to the "Crime Victims' Compensation Fund" on the ground that this claim "[wa]s not a matter properly cognizable" in a Rule 27.26 motion.

## I.

Appellant's guilty pleas stemmed from his unsuccessful attempt on July 25, 1981, to escape from the Missouri State Penitentiary by partially cutting through a barred door with an acetylene torch. During the course of the aborted escape attempt, the appellant took three guards hostage.

Appellant suggests that his guilty plea should be vacated because of his belief that he would be transferred out of state. He asserts that his only reason for pleading guilty was his desire to be transferred out of state. While it is clear from the record

that appellant wanted to be transferred, it is equally clear that there was no absolute guarantee that this would take place. Instead, there were assurances that every effort would be made to accomplish this request.

█ While the appellant might have subjectively believed that a transfer to another institution was guaranteed, it was unreasonable for him to have entertained such a belief at the time his pleas were entered. McMahon v. State, 569 S.W.2d 753, 758 (Mo. banc 1978). That is to say, a mistaken, subjective belief by a defendant in entering a plea of guilty does not provide grounds for setting aside that guilty plea where "there is no reasonable basis for the belief in light of the guilty plea record." Id.

█ Whatever subjective belief the appellant might have concerning the certainty of the transfer, the appellant's attorney, the assistant prosecutor and the trial court "clearly disabused the [appellant] of that belief" at the guilty plea proceeding. McMahon 569 S.W.2d at 758.[1] Consequently, even if the appellant subjectively believed that he was being guaranteed a transfer to an out-of-state penitentiary, that mistaken belief does not provide grounds for setting aside his otherwise voluntary pleas of guilty, since that belief was unreasonable under the circumstances.

The record of the guilty plea proceeding clearly demonstrates that the "promise" made to the appellant prior to the entry of his guilty pleas was that the State would "try" to get the appellant transferred to another institution, and there is no evidence in the record that prison officials did not, in fact, make a good-faith effort to obtain such a transfer. The burden was on the appellant to establish his grounds for relief by a preponderance of the evidence. Pelham v. State, 713 S.W.2d 614, 616 (Mo. App.1986); Rule 27.26(f).

Accordingly, the trial judge was not "clearly erroneous" under Rule 27.26(j) in

---

1. The fact that the appellant's subjective mistaken belief was unreasonable and self-induced clearly distinguishes this case from the cases cited by the appellant in his brief, State v. Hovis, 353 Mo. 602, 183 S.W.2d 147 (1944), and State v. Williams, 361 S.W.2d 772 (Mo. banc 1962), where the defendants were allowed to withdraw their guilty pleas because they reasonably relied upon, and were misled by, statements and actions of the prosecuting attorney in entering those pleas.

refusing to allow the appellant to withdraw his guilty pleas.

## II.

Appellant's second point goes to the propriety of the judgment against him for $26 for the Crime Victims' Compensation Fund. The alleged events constituting crimes appellant plead guilty to occurred on July 25, 1981. The effective date of § 595.045.1 RSMo was October 1, 1981. Thus, even though appellant was not sentenced until March 23, 1982, since the crimes occurred before the effective date of the statute, the $26 Crime Victim's Compensation Fund judgment could not be constitutionally assessed against appellant. Thus, the sentence imposed on appellant was in excess of the maximum authorized by law, and cognizable under Supreme Court Rule 27.26. *Wright v. State*, 677 S.W.2d 425, 426 (Mo.App.1984).

The judgment of the trial court is reversed on this point. This point is remanded to the trial court with direction that the $26.00 assessment be withdrawn from the Judgment and Sentence.

All concur.