**STATE of Missouri, Respondent,**

v.

**Jeffrey H. KOBEL, Appellant.**

**No. WD 48882.**

Missouri Court of Appeals,
Western District.

June 25, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 30, 1996.

Application to Transfer Denied
Sept. 17, 1996.

Elizabeth Unger Carlyle, Lee's Summit, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joanne E. Joiner, Assistant Attorney General, for respondent.

Before LAURA DENVIR STITH, P.J., and ULRICH and SMART, JJ.

LAURA DENVIR STITH, Presiding Judge.

Appellant Jeffrey H. Kobel was charged with and tried for first degree assault and armed criminal action as an accomplice in an assault upon a bouncer outside a Kansas City bar in December 1993. The jury convicted Mr. Kobel of second degree assault, for which he was sentenced to two years in prison, and armed criminal action, for which he was sentenced to four years in prison.

Mr. Kobel appeals the convictions on the bases of insufficiency of the evidence, failure to submit an instruction on a lesser included offense, and erroneous exclusion from evidence of a prior inconsistent statement. We find no reversible error and affirm both convictions. Mr. Kobel also appeals the denial of his Rule 29.15 post-conviction motion alleging ineffective assistance of counsel. We affirm the denial of the post-conviction motion as well.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The testimony supporting the verdict is as follows: Two vehicles, including Mr. Kobel's car, were moving together along Main street near 18th Street in downtown Kansas City in the early morning hours of December 13, 1993. Both vehicles stopped in front of a bar called Illusions shortly after closing time. Illusions was known as a bar frequented by homosexuals. Mr. Kobel and another male were in his car. A total of five males, including Mr. Kobel, exited the two vehicles and began crossing the street towards the bar at approximately the same time. Mr. Kobel was carrying a can of mace. One of the other males, Christopher Anderson, carried a metal bar used to lock an automotive steering wheel into place. All five males, including Mr. Kobel, were yelling hostile and derogatory remarks concerning sexual orientation to a group of women near the entrance of the bar. At the direction of Robert Tucker, a "bouncer" at Illusions, the women took refuge in the bar while Mr. Tucker stood guard outside the door.

Mr. Kobel, Mr. Anderson and the other males surrounded Mr. Tucker. Mr. Anderson assaulted Mr. Tucker by hitting him twice in the head with the metal steering wheel bar. A few seconds thereafter Mr. Kobel sprayed mace in Mr. Tucker's face. Mace is a substance which is designed to cause temporary incapacitation when sprayed near a person's face. After being maced, Mr. Tucker fell to the ground. All five males left the scene at the same time and drove off in the same direction.

Mr. Tucker suffered a cracked rib, considerable bleeding, extensive stitches and temporarily burning eyes as a result of the attack.

Mr. Kobel denied the accuracy of most of the above evidence in his testimony at trial. He characterized his presence outside of the bar on the night in question merely as a "chance involvement." More specifically, he testified that he had not associated with Mr. Anderson on the night in question. Rather, Mr. Kobel testified, he had been driving alone around downtown Kansas City, an area unfamiliar to him, in an effort to locate a bar called "The Deep" where he was supposed to pick up his brother-in-law. Unable to locate the bar in question, he said, he stopped in front of Illusions and got out of the car to ask directions. By bad luck, he did so just as Mr. Anderson confronted Mr. Tucker. Mr. Kobel further testified he sprayed the mace in self-defense because he thought Mr. Tucker was charging towards him with an empty beer bottle.

The jury apparently did not believe Mr. Kobel's story, for it convicted him of second degree assault and armed criminal action. On appeal, Mr. Kobel alleges that: (1) the State failed to prove he acted as an accomplice of Mr. Anderson; (2) the State failed to prove use of a dangerous instrument; (3) the court erred in failing to instruct on the lesser included offense of assault in the third degree; and (4) the court erred in exclusion of the prior inconsistent statement of a witness. Mr. Kobel also asserts ineffective assistance of counsel in failing to ask for a lesser included offense instruction and in failing to call Mr. Anderson as a witness. We address each contention in turn.

## II. *DIRECT APPEAL*

### A. *Standard of Review*

 In determining whether a submissible case was made, we review the evidence and reasonable inferences therefrom in the light most favorable to the State and disregard all contrary evidence and inferences. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to a determination of whether there is sufficient evidence from

which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). Substantial evidence is that "from which the trier of fact could reasonably find the issue in harmony with the verdict." *State v. Gomez,* 863 S.W.2d 652, 655 (Mo.App.1993).

▪ Absent clear abuse of discretion, an appellate court will not interfere with the trial court's ruling on admission or exclusion of evidence, including a decision to exclude cumulative evidence or to impose limitations on impeachment of a witness. *State v. Heinz,* 607 S.W.2d 873, 877 (Mo.App.1980); *State v. Radford,* 646 S.W.2d 366, 367 (Mo. App.1982); *State v. Kalna,* 595 S.W.2d 299, 300 (Mo.App.1979).

### B. *Accomplice Liability*

▪ Mr. Kobel first claims on appeal that there was insufficient evidence to support a finding that he was an accomplice to Mr. Anderson's assault on Mr. Tucker. Missouri law is clear that anyone who in any way aids, abets, or encourages another in the commission of a crime by *any form of affirmative participation* with a common intent and purpose is guilty to the same extent as the principal offender even though the accomplice did not personally commit every element of the principal offense. *See, e.g., State v. Gaines,* 807 S.W.2d 678, 679 (Mo.App. 1991).

▪ Mr. Kobel admits his presence at the scene of the crime, but notes that such presence alone is insufficient to make one an accomplice. It is, however, a relevant indicia of affirmative participation in the crime. Other relevant indicia of accomplice liability include acting as part of a "show of force" in the commission of the crime, flight after the crime, and association with others before, *during* or after commission of the crime.

*State v. Roper,* 819 S.W.2d 384, 386 (Mo.App. 1991); *Gaines,* 807 S.W.2d at 679. Each of these indicia are present here.

Thus, the evidence was that the two vehicles arrived together in front of the bar. There was evidence that, as they pulled up in front of the bar, all five males displayed a truculent attitude towards homosexuals by yelling derogatory epithets at the people congregating outside of the bar. All five males got out of their vehicles at the same time and quickly crossed the street towards the bar together as a group. Both Mr. Kobel and Mr. Anderson carried objects—mace and the metal bar, respectively—which were then used to assault the victim.

At the time of the assault, Mr. Kobel was in very close physical proximity to the victim and the principal attacker, Mr. Anderson. Mr. Kobel and the other males surrounded Mr. Tucker. Mr. Kobel sprayed mace at the victim's face within seconds after Mr. Anderson struck the victim twice in the head with a metal bar. All five males then immediately returned to their vehicles and abruptly left the crime scene together, heading in the same direction.

These facts, taken together, constitute evidence of presence at the scene, participation in a show of force, association during the attack, and flight. This evidence also supports the inference that the mace was sprayed to incapacitate Mr. Tucker so as to allow Mr. Anderson and the others to leave the crime scene without restraint or further identification of the attacker or his vehicle. The evidence is fully sufficient to support the jury's finding that Mr. Kobel was an accomplice in acting with Mr. Anderson with a common intent and purpose. As an accomplice, Mr. Kobel is guilty to the same extent that Mr. Anderson is guilty.[1]

### C. *Use of a Dangerous Instrument*

▪ In order to convict Mr. Kobel of second degree assault, the jury was required to

1. Mr. Kobel offers his own undisputed testimony in support of his claim that there was insufficient evidence to convict him as an accomplice: he had no prior agreement or plan with Mr. Anderson with regard to the assault, he did not carry or use a dangerous or deadly instrument, he readily admitted his presence at the scene to the police when questioned after the incident,

and he did not specifically encourage the use of the metal bar upon Mr. Tucker. The jury was not required to believe Mr. Kobel's testimony. Moreover, none of these factors would preclude the jury from finding accomplice liability if the jury believed that, once present, he took part in a show of force, sprayed mace as part of the attack and fled. *See Gaines,* 807 S.W.2d at 679.

find that he "attempt[ed] to cause or knowingly caus[ed] physical injury to another person by means of a deadly weapon or dangerous instrument." § 565.060.1(2), RSMo.1986 and Supp.1993. To convict him of armed criminal action, the jury was required to find that the assault was committed with the use, assistance or aid of a dangerous instrument or deadly weapon. § 571.015.1, RSMo.1986.

A "dangerous instrument" is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." § 556.061.9. "Serious physical injury" is "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 556.061.28.

In *State v. Seagraves,* 700 S.W.2d 95 (Mo. App.1985), the Court held that there was ample evidence to support a finding that a metal bar, approximately thirteen inches long and one inch in diameter, which was used to strike the victim several times, was a "dangerous instrument." Mr. Kobel attempts to distinguish *Seagraves* on the basis that the victim in that case was struck with a metal bar as many as sixteen times while in the present case Mr. Tucker was struck only twice.

■ The standard for determining whether something is a "dangerous instrument" is not how many times the victim was struck with it, however. Nor does a conviction for second degree assault with a dangerous instrument require proof of *serious* physical injury. The relevant issue is whether the instrument is readily *capable* of causing death, serious disfigurement, or protracted loss or impairment of a body part and whether *any type* of physical injury resulted. We have no hesitation in holding that Mr. Anderson knowingly used the metal bar in a way which caused physical injury, and that his use of the bar was readily capable of causing serious physical injury.

Mr. Kobel also suggests that there was insufficient evidence to show that he personally participated in any use of the metal bar as a dangerous instrument. As discussed in the preceding section, however, there was ample evidence that Mr. Kobel was guilty as an accomplice of Mr. Anderson. This point is denied.

### D. *Failure to Instruct on Lesser Included Offense*

■ Mr. Kobel's third claim is that it was plain error for the trial court not to submit an instruction on third degree assault. Because counsel for Mr. Kobel failed to request such an instruction at trial, the failure to submit an instruction on the lesser included offense of third degree assault can be reviewed only for plain error.

Numerous cases hold that a trial court will not be convicted of error, plain or otherwise, in failing to *sua sponte* give a lesser included offense instruction where, as here, it was not requested by defense counsel. *See State v. Smith,* 686 S.W.2d 43, 45 (Mo.App.1985); *State v. Hall,* 789 S.W.2d 526, 527 (Mo.App. 1990); *State v. Cole,* 753 S.W.2d 39, 41 (Mo. App.1988).

■ Moreover, frequently defense counsel will consciously decide not to request an instruction on a lesser included offense for strategic purposes. The rationale for not submitting such an instruction, even if the evidence would have supported it, is to avoid the risk "that the jury may convict of the lesser offense, if submitted, rather than render a not guilty verdict on the higher offense if the lesser is not submitted." *State v. Olson,* 636 S.W.2d 318, 322 (Mo. banc 1982). "A defendant may not complain of prejudice when the court has conducted the trial in harmony with his apparent strategy and intent" in not seeking an instruction on a lesser included offense. *State v. Buskuehl,* 626 S.W.2d 651, 653 n. 2 (Mo.App.1981). For these reasons, we decline to exercise our discretion to review for plain error.

### E. *Exclusion of Prior Inconsistent Statement*

■ Finally, Mr. Kobel claims that the trial court committed prejudicial error in excluding certain portions of the pretrial statement of a witness, Stephanie Stephenson, which were inconsistent with her trial

testimony. Because Mr. Kobel failed to raise this allegation of error in his post-trial motion, he has not preserved this issue for appeal. *See State v. Bradshaw,* 779 S.W.2d 617, 619 (Mo.App.1989) (issue not raised in motion for new trial is not preserved for appellate review). We have the discretion to review for the presence of plain error which resulted in manifest injustice. Here, however, the subject matter of the inconsistent statement related only to such collateral issues as the precise positioning of Mr. Kobel's car outside of the bar vis-a-vis Mr. Anderson's vehicle and whether there were four or five attackers. Admission of the inconsistent statement would not have affected the verdict. Moreover, this inconsistency was fully explored during cross-examination of Ms. Stephenson. In addition, her testimony was merely cumulative of that of other witnesses who testified as to the relative position of the vehicles. In these circumstances, we do not believe that exclusion of the statement resulted in manifest injustice.

## III. *DENIAL OF POST–TRIAL MOTION ALLEGING INEFFECTIVE ASSISTANCE OF COUNSEL*

### A. *Standard of Review*

■ Appellate review of the motion court's decision regarding ineffective assistance of counsel is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j). Such findings and conclusions are deemed clearly erroneous only if, after reviewing the entire record, this Court is left with the definite and firm impression that a mistake has been made. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987).

■ To prove a claim of ineffective assistance of counsel, Mr. Kobel was required to show by a preponderance of the evidence that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would have exhibited under similar circumstances. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Sanders,* 738 S.W.2d at 857. There is a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance and trial strategy. *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994); *Bevly v. State,* 778 S.W.2d 297, 298 (Mo.App.1989).

■ If his counsel's conduct is found to be deficient, then Mr. Kobel must additionally affirmatively prove that he was prejudiced as a result of his counsel's actions. *Strickland,* 466 U.S. at 693–94, 104 S.Ct. at 2067–68.

### B. *Lesser Included Offense*

■ Mr. Kobel first contends that his counsel's failure to request a lesser included offense instruction on third degree assault constituted ineffective assistance of counsel. He says that this allegation entitled him to an evidentiary hearing as to whether the decision not to ask for such an instruction was a matter of trial strategy. On the facts of this case, such a hearing was not necessary, for even if counsel had requested such an instruction it was not warranted by the evidence. The failure to request the instruction therefore was not prejudicial.

More specifically, third degree assault is defined to include knowingly causing physical injury while second degree assault is defined to include knowingly causing physical injury by means of a dangerous instrument. §§ 565.070, 565.060. Mr. Kobel submits that a third degree assault instruction was justified because the jury could have believed that Mr. Tucker suffered physical injury as a result of being sprayed with mace by Mr. Kobel, yet not believed that Mr. Kobel was involved in the assault upon Mr. Tucker with the metal bar.

■ We disagree. A defendant is entitled to an instruction on a lesser included offense only if there is an evidentiary basis for both acquittal for the greater offense *and* conviction for the lesser offense. *State v. Olson,* 636 S.W.2d 318, 321–2 (Mo. banc 1982); *State v. Chambers,* 884 S.W.2d 113, 115 (Mo.App.1994). If the jury believed Mr. Kobel's testimony that he used the mace in self-defense, then even if the mace hurt Mr. Tucker he would have been entitled to ac-

quittal, not a conviction of third degree assault. If the jury did not believe that Mr. Kobel used the mace in self-defense, then it had to find that Mr. Kobel's actions were unjustified and affirmatively connected to the principal assault.

There simply was no reasonable or rational basis for the jury to find that Mr. Kobel was guilty of assaulting Mr. Tucker without also necessarily finding that Mr. Kobel affirmatively participated with a common purpose in the principal assault upon Mr. Tucker. Accordingly, the failure to submit an instruction on the lesser included offense of third degree was not error, and thus could not have constituted ineffective assistance of counsel. *See Davis v. State,* 657 S.W.2d 677 (Mo.App. 1983) (where there was no evidence to support submission of instruction on lesser included offense, there was no basis for claim of ineffective assistance of counsel arising out of the failure to request such an instruction).

### C. *Failure to Call Mr. Anderson*

■■■ Mr. Anderson was not called at trial as a witness for the defense. Mr. Kobel contended in his motion for new trial and in his Rule 29.15 motion and contends on appeal that Mr. Anderson would have provided crucial testimony to corroborate his defense that he did not participate in any manner in Mr. Anderson's assault upon Mr. Tucker, and that failure to call Mr. Anderson constituted ineffective assistance of counsel. We disagree.

At a hearing held at the time of the motion for new trial, Mr. Kobel's counsel testified that he advised Mr. Kobel that Mr. Anderson could be presented as a witness for the defense and discussed with Mr. Kobel how and why Mr. Anderson's testimony *might be* helpful to the defense. Counsel also testified that it was his "belief that I didn't know how

much he [Mr. Anderson] could help Mr. Kobel but I thought he might be able to help him." Thus, if it were solely up to him, counsel said he would have called Mr. Anderson, although he clearly did not view Mr. Anderson as a crucial or necessary defense witness.

Mr. Kobel informed his attorney that he did not want Mr. Anderson to testify because Mr. Kobel thought he could be acquitted without Mr. Anderson's testimony, and he did not want to burden Mr. Anderson with further involvement in the case. Mr. Kobel now says he then failed to appreciate the seriousness of the charges against him. He now claims that it was his attorney's responsibility to ensure that all potentially helpful witnesses were called to testify even though such action was contrary to his own explicit directions and desires. According to Mr. Kobel, if the client does not permit counsel to exercise professional judgment, then the attorney has a duty to withdraw from representation rather than to "acquiesce in the client's wrong-headed wishes."

■■■ Mr. Kobel does not, however, cite to any case to support his contention that counsel had a duty to override Mr. Kobel's decision not to call Mr. Anderson as a witness. The cases hold that such post-conviction second thoughts by the defendant regarding trial strategy do not provide a basis for setting aside the conviction. Rather, as the Supreme Court said in *State v. Thomas,* 625 S.W.2d 115 (Mo.1981), "failure of a strategy knowingly and voluntarily pursued by the defendant does not entitle him to another try under the guise of ineffective assistance of counsel." Numerous other cases are in accord.[2]

---

2. *See, e.g., Amrine v. State,* 785 S.W.2d 531, 534 (Mo. banc 1990) (not ineffective assistance of counsel for an attorney to fail to present the testimony of a prison official during the sentencing phase where the defendant told his attorney that he did not want the prison official to testify); *Guinan v. State,* 769 S.W.2d 427 (Mo. banc 1989) (following *Thomas* in rejecting claim of ineffective assistance of counsel where counsel repeatedly urged defendant to attend sentencing hearing, but defendant still chose to be absent for

punishment phase of trial); *Trimble v. State,* 693 S.W.2d 267 (Mo.App.1985) (following *Thomas* where counsel followed client's demand that no evidence or argument be presented at sentencing phase in death penalty case); *Davis v. State,* 657 S.W.2d 677 (Mo.App.1983) (accused who knew witness would not be called as defense witness but made no complaint to his attorney did not have basis for claim of ineffective assistance of counsel).

Accordingly, we find that Mr. Kobel has also failed to prove that counsel was ineffective.

For the reasons stated above, the judgments of conviction and the denial of the Rule 29.15 motion are affirmed.

All concur.